LOUISIANA & TEXAS LUMBER COMPANY v. MRS. WILEY DUPUY ET AL.

Decided October 24, 1908.

**1.—Boundary—Dispute—Agreement—Validity.**

When there is a dispute as to a boundary between adjacent land owners, and a boundary is agreed upon, the agreement is binding on the parties although it may be afterwards discovered that the agreed boundary is not the original boundary.

**2.—Same—Estoppel—Charge.**

The issues being boundary and estoppel, the court charged the jury, in substance, that if the defendant in buying the land in controversy acted on an agreement of the former owners to fix the boundary by agreement, and, "without knowing of a mistake, if there was a mistake," in fixing the boundary, then the plaintiff claiming under one of the owners would be estopped. Held,

harmless error in view of the fact that the charge upon estoppel was correct, and there being no evidence that the defendant at the time of its purchase had any notice of any mistake in the location of the line, the jury could not have been misled.

### 3.—Same—Purchaser without Notice, not Bound.

One who buys land from a party to an agreement fixing a disputed boundary, but without notice of such agreement, will not be estopped to claim to the true original boundary, and the fact of notice must be shown affirmatively by the party alleging estoppel.

### 4.—Charge—Omission—Assignment of Error.

The failure of a trial court to supply an omission in its charge after the same has been called to its attention by a special charge, though the charge was inaccurate, must be made the basis of a distinct assignment in order to constitute reversible error.

### 5.—Burden of Proof—Failure to Charge Upon.

The failure of the trial court to charge upon the burden of proof is not reversible error in the absence of a request for such charge.

### 6.—Trespass to Try Title—Equitable Title—Burden of Proof.

A party asserting an equitable title against a legal title to land has the burden of showing that at the time the legal title was acquired the purchaser thereof had notice of the equity sought to be asserted against it.

Appeal from the District Court of Houston County. Tried below before Hon. B. H. Gardner.

*Nunn & Nunn,* for appellant.

*Aldrich & Crook,* for appellees.—The court did not err in refusing defendant's special charge No. 3, because said charge requested the court to charge that it was incumbent on plaintiff to show, by a preponderance of the evidence, that M. C. Dupuy had no notice of an agreed boundary line, when the burden of showing such fact was on the defendant. Halbert v. DeBode, 15 Texas Civ. App., 615; Peterson v. McCauley, 25 S. W., 829; Hill v. Moore, 62 Texas, 610; Lewis v. Cole, 60 Texas, 341; Johnson v. Newman, 43 Texas, 642.

PLEASANTS, Chief Justice.—This is a suit by the appellees, the widow and heirs at law of M. C. Dupuy, deceased, to recover 9 7-10 acres of land alleged to be a part of the Allen Latham survey in Houston County. The suit is brought in the form of an action of trespass to try title, but the only issues raised by the evidence are those of boundary and estoppel.

Plaintiffs were entitled to recover the land sued for if it was a part of the Latham survey, unless they were estopped from such recovery by facts pleaded by defendant.

The defendant claimed the land is a part of the S. Hudson survey, which is the older of the two surveys, and the line of which is called for in the field notes of the Latham survey as one of its boundary lines. It is further alleged in defendant's answer that there was uncertainty and confusion as to the true location of said boundary line, and that "on account of the confusion of the calls in the patent of the said S. Hudson

survey, and the uncertainty as to its true boundary lines, heretofore, to wit, on or about —— day of ——, 1900, and just before the defendant Louisiana & Texas Lumber Company purchased the land in this suit, and with the view of making said purchase from the then owners of the said S. Hudson survey, and part of the Allen Lathan survey, it became necessary that the dividing lines between these two surveys should be established and agreed upon by the parties concerned as a condition on which the said Louisiana & Texas Lumber Company would purchase the same, and to this end and to this purpose B. F. Duren was appointed and constituted the agent of Lucien Minor and Jno. Adriance, administrators successively of the Spofford estate, then the owner of the S. Hudson survey, and W. B. Wall and H. W. Moore, the then owners of a one-half interest in the Allen Latham survey, and one Furch, whose name is not known, the owner of the other one-half of the said Allen Latham survey, met together upon the ground and agreed upon a dividing line between the said Allen Latham survey, and in pursuance of that agreement B. F. Duren, the surveyor, did run, mark and establish the said boundary between the two said surveys as follows, to wit: Beginning at the north corner of the J. M. Creacy survey, and running S. 31 deg. W. 950 varas with its western boundary line to its S.-W. corner. Thence S. 59 deg. E. 214 vrs. with its S.-W. boundary line, establishing corner on the same. Thence S. 31 deg. W. 200 varas to corner. Thence N. 59 deg. W. 470 varas to corner on the Higgenbotham line, thus establishing and making a dividing line between the said S. Hudson survey and the said Allen Latham survey, with the consent and by the agreement of all parties then present interested in the said land. That thereafter, and on the faith of the said agreement, and believing the said line as established by the said B. F. Duren to be the true boundary line between the Allen Latham and S. Hudson survey, this defendant company, the Louisiana & Texas Lumber Company, purchased the said S. Hudson survey from the said Spofford estate, and purchased the interest and right of the said W. B. Wall and H. W. Moore, as aforesaid, in the Allen Latham survey, according to the boundary thus agreed upon and established between these two surveys; that at the time M. C. Dupuy was not a party interested in either of these tracts of land, but he was present, and cognizant of the fact that this dividing line had been thus agreed upon and established; that thereafter he made a purchase of a part of the Allen Latham survey from the said Furch according to the boundary established and agreed on as the dividing line between the said two surveys as aforesaid; but subsequently the plaintiff, conceiving that he might be able to disregard the settlement and establishment of this dividing line, as aforesaid, and that he might insist upon the line marks placed upon the ground, as aforesaid, by the said Hudson, went to the said Furch and made further purchase from him according to his old line and marks made by the said Hudson, as aforesaid, to include a small strip of land on the S. Hudson survey, as shown by the line marks established by B. F. Duren, surveyor, by agreement between the owners of these two several surveys, as aforesaid, with a full knowledge of the facts as hereinbefore set up; wherefore these defendants say that the plaintiff is estopped and bound by the adjustment of the boundary as aforesaid, and can not now be allowed to dispute the same."

The trial in the court below was by a jury, and resulted in a verdict and judgment in favor of the plaintiffs.

The first two assignments of error complain of the charge given by the court. We have considered each of these assignments and the several paragraphs of the charge complained of, and are of opinion that said charges contain no affirmative error, and therefore neither of said assignments should be sustained. It was not necessary that there should have been no mistake in the location of the agreed line in order to make the establishment of said line by agreement binding on the parties, and therefore knowledge on the part of defendant, at the time it purchased, that the agreed line was not the true line would not defeat its right to hold to said line, it having purchased on the faith of such agreement. Cooper v. Austin, 58 Texas, 494.

The court, in submitting the issue of agreed boundary, told the jury, in substance, that if they believed that the line was fixed by agreement, as alleged in defendant's answer, and that the defendant purchased of the owners of the Hudson survey the land in controversy in this suit, believing that the same belonged to the Hudson survey, and in good faith paying value therefor, and that in thus buying it "acted on said agreement and location of said line, not knowing of any mistake, if there was a mistake, then in that event you are instructed that the owners of the Latham survey would be estopped to deny that said boundary line was not properly located." This was not affirmative error, because it is true that the facts stated in the charge would raise an estoppel against the parties to said agreement and those who purchased with knowledge thereof. The converse of the proposition stated in the above quotation from the charge was not given, and in view of the fact that there is no evidence in the case tending to show that the defendant, at the time of its purchase, had any notice of any mistakes in the location of the agreed line, we can not say that the jury were misled by this charge into the belief that, unless the defendant was shown to have purchased without knowledge of any such mistake, they could not find that plaintiffs were estopped. Gulf, C. & S. F. Ry. v. Hill, 95 Texas, 629.

The defendant requested special charges correcting this inaccuracy in the charge given by the court, but none of the special charges requested should have been given, because they all authorized the jury to find for the defendant if the boundary line was fixed by agreement, as alleged in the petition, regardless of whether M. C. Dupuy at the time of his purchase knew of said agreement. The question of whether the court erred in not correcting the inaccuracy in his charge, after his attention had been called thereto by the requested charges, is not raised by any assignment presented in appellant's brief. El Paso Electric Ry. Co. v. Harry, 83 S. W., 735.

If the land in controversy was, as found by the jury, a part of the Latham survey, plaintiffs held the legal title thereto, and, in order for defendant to prevail on its equitable claim growing out of the estoppel alleged to have arisen from the agreement as to the boundary line, the burden was upon it to show that at the time M. C. Dupuy purchased he had knowledge of such agreement. Edwards v. Brown, 68 Texas, 329; Baldwin v. Root, 90 Texas, 552; Fordtran v. Perry, 60 S. W., 1000.

The assignments from number four to number seven inclusive complain of the refusal of the court to give special charges requested by the defendant. All of these charges ignore appellee's right to recover regardless of the agreement as to the location of the boundary line, provided it was not shown that M. C. Dupuy at the time he purchased had knowledge of such agreement, and for that reason were properly refused.

There is no reversible error in the failure of the court to charge that the burden of proof in this case was upon plaintiffs. If such a charge was proper in this case the failure of the court to give it would not, in the absence of a request therefor, constitute reversible error.

The eighth assignment complains of the verdict on the ground that it is not supported by the evidence, in that the undisputed evidence shows that the boundary line between the Hudson and Latham surveys had been fixed by agreement between the owners of said surveys, and as so fixed the land in controversy was a part of the Hudson survey, and that M. C. Dupuy knew of this agreement at the time he purchased.

The statement under this assignment does not support it in that it does not show that M. C. Dupuy had notice of the agreement as to the location of the boundary line at the time he purchased. The statement is that there was no evidence that Dupuy did not have notice of the agreement at the time he purchased. As before stated, this was not sufficient to defeat Dupuy's title. No rule is more fully settled by the decisions of this state than that which requires a party asserting an equitable against a legal title to show that, at the time the legal title was acquired, the purchaser thereof had notice of the equity sought to be asserted against it. The cases cited by appellant (Linnartz v. McCullough, 27 S. W., 279; Bremer v. Case, 60 Texas, 153, and Rogers v. Pettus, 80 Texas, 427), are all cases in which a junior title was asserted against a senior, and the holding in such cases that it devolved upon the purchaser of the junior title, in order to establish his claim, to show that he purchased without knowledge of the senior title is not only not in conflict with the rule above stated, but is in harmony therewith. In all of these cases the holder of the senior title held the superior legal title, and the purchaser holding a junior deed took no title, unless he showed his right in equity to hold the land by reason of the fact that he purchased without notice of the senior unrecorded deed.

We are of the opinion that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Application for writ of error dismissed for want of jurisdiction.